UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

UNITED STATES OF AMERICA,

          Plaintiff/Appellee,

v.

DAVID ANDREW CARTER,

          Defendant/Appellant.

Case No. 07-20309

Hon. Victoria A. Roberts

_____

**ORDER DENYING MOTION FOR BOND PENDING APPEAL**

**I.      INTRODUCTION**

This matter is before the Court on Defendant's Motion for Bond Pending Appeal (Doc. 258), filed May 1, 2009.  The Court **DENIES** the Motion.

**II.     BACKGROUND**

Defendant was charged along with 10 co-defendants with: Count I - Conspiracy to Possess with Intent to Distribute and to Distribute Marijuana, in violation of 21 U.S.C. §841(a)(1) and 846, and Count II - Possession with Intent to Distribute Marijuana, Aiding and Abetting, in violation of 21 U.S.C. §841(a)(1) and 18 U.S.C §2.  Defendant alone was charged with Count III - Using/Carrying a Firearm During a Drug Trafficking Offense, in violation of 18 U.S.C. §924(c).

A jury convicted Defendant of Possession with Intent to Distribute Marijuana, Aiding and Abetting, in violation of 21 U.S.C. §841(a)(1) and Using/Carrying a Firearm

During a Drug Trafficking Offense, in violation of 18 U.S.C. §924(c); he was acquitted of Count I.   Both convictions carry mandatory minimum sentences.

On March 23, 2009, this Court sentenced Defendant to 120 months imprisonment on the possession count and a consecutive 60 months on the weapons count.  The Court granted Defendant's request to self-report to the United States Bureau of Prisons ("BOP"), with no objection by the Government.  Defendant was scheduled to report to the BOP on May 5, 2009.

On April 1, 2009, Defendant timely filed a Notice of Appeal.

On May 1, 2009, Defendant filed this Motion for Bond Pending Appeal.  He asks the Court to grant him bond pending appeal, or in the alternative, to enter an order delaying his report date so that counsel could receive and review the trial transcripts to more fully develop the Motion.  The Government opposed the Motion.

On May 4, 2009, this Court granted Defendant's Motion in part and adjourned his report date to June 8, 2009. (Doc. # 260).  The Court allowed the parties to review the trial transcripts and file supplemental briefs.

On May 26, 2009, Defendant filed a supplemental brief in support of his Motion. The Government did not file a supplement.

**III.    CASE LAW AND ANALYSIS**

Under the Bail Reform Act of 1984, a person found guilty of an offense and sentenced to a term of prison must be detained unless a judicial officer concludes: (1) by clear and convincing evidence, that he is not likely to flee or pose a danger to the safety of another person or the community, and (2) that the appeal is not for delay and raises a substantial question of law or fact likely to result in reversal, an order for new

2

trial, a sentence that does not include a term of imprisonment, or a sentence reduced to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process. 18 U.S.C. § 3143(b)(1); *United States v. Chilingirian*, 280 F.3d 704, 709 (6th Cir. 2002); *United States v. Pollard*, 778 F.2d 1177, 1181 (6th Cir. 1985).

Section 3143 creates a presumption against release pending appeal. *United States v. Vance*, 851 F.2d 166, 169 (6th Cir. 1988), cert. denied, 488 U.S. 893, 109 S. Ct. 231, 102 L. Ed. 2d 220 (1988).  In overcoming the presumption, the burden of proof rests with the defendant. *Id.* (citing *Pollard*, 778 F.2d at 1181-1182).

### A.  Risk of Flight and Danger to Others

In ascertaining whether to detain or release a defendant, the judicial officer is directed by the statute to consider the available information concerning several factors, including: (1) the nature and seriousness of the offense charged; (2) the weight of evidence against the defendant; (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *Vance*, 851 F.2d at 168-169 *(*quoting *United States v. Delker*, 757 F.2d 1390, 1393, 1398-99 (3d Cir. 1985).

Defendant says he is not a flight risk and does not pose a danger to the community.  He notes that he: (1) is 42 years old with no criminal record, (2) is married and resides with his wife and stepson, (3) was a small business owner up to the time of this offense, (4) has the strong support of parents and siblings who live in this area, and

(5) was convicted of a non-violent offense.

The Court considered these factors at sentencing, so it need not rehash them here.  Applying the elements of 18 U.S.C. § 3143(b)(1)(A)-(B), the Court finds by clear and convincing evidence that Defendant is not likely to flee or pose a danger to the safety of another person or the community if allowed to remain on bond pending his appeal.

### B.  Substantial Question of Law or Fact

An appeal raises a substantial question when the appeal presents a close question or one that could go either way and the question is so integral to the merits of the conviction that it is more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor. *Pollard*, 778 F.2d at 1182.  See also *United States v. Mikell*, No. 97-CR-81493, 2007 U.S. Dist. LEXIS 4233, at *6 (E.D. Mich. Jan. 22, 2007) (unpublished) ("Courts have also held that a substantial question is 'either a novel question, one that has not been decided by controlling precedent, or one which is fairly doubtful.'"); *United States v. Henson*, 663 F. Supp. 1112, 1113 (W.D. Ky. 1987) (same) (*citing United States v. Miller*, 753 F.2d 19, 23 (3d Cir. 1985).

Defendant cites *United States v. Craig*, 522 F.2d 29 (6th Cir. 1975) in support of his contention that his appeal raises a substantial question regarding sufficiency of the evidence.  Defendant did not move for acquittal or new trial, so he raises this issue for the first time in this Motion.

In *Craig*, the defendant drove his co-defendant to an apartment complex where federal agents, posing as buyers, had arranged a controlled drug buy.  Craig remained in his truck as the co-defendant carried a closed box containing drugs into the

4

apartment.  Federal agents in the apartment opened the box and gave a pre-arranged signal to other agents stationed in vehicles near the apartment.  When the agents moved toward the apartment, Craig sped off and fled.  He was apprehended two years later and convicted by a jury of aiding and abetting in the possession of drugs.  Craig challenged his conviction based on sufficiency of the evidence.

On appeal, the Sixth Circuit reversed.  It reasoned that the evidence against Craig consisted solely of his presence in the truck at the apartment, his flight from the scene and the presence of a shotgun in the vehicle.  The court said that evidence was insufficient to establish essential elements of the offense -- that Craig had either the intent to exercise control over the drugs, or knowledge of the presence of the drugs in the closed box.  Accordingly, the evidence was insufficient to support either a conviction for illegal possession of drugs or aiding and abetting in their possession. *Craig*, 522 F.2d at 31-32.

The critical inquiry on review of the sufficiency of the evidence is not simply whether the jury was properly instructed, but whether the evidence could reasonably support a finding of guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319; 99 S. Ct 2781, 2789; 61 LEd2d 560 (1979).  This inquiry does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." *Woodby v. INS*, 385 U.S. 276, 282; 87 S. Ct. 483, 486; 17 L. Ed. 2d 362, 367 (1966).  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Johnson v. Louisiana*, 406 U.S. 356, 362; 92 S. Ct. 1620, 1625; 32 L. Ed. 2d 152, 160 (1972).

5

Under this standard of review, Defendant faces "a very heavy burden." See *United States v. Tocco*, 200 F.3d 401, 424 (6th Cir. 2000).

In order to establish a defendant guilty of possession with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), the government must prove the following elements beyond a reasonable doubt: (1) the defendant knowingly; (2) possessed a controlled substance; (3) with intent to distribute." *United States v. Gibbs*, 182 F.3d 408, 424 (6th Cir. 1999). "To prove aiding and abetting, the government must show that [the defendant] knew that the principals possessed [the controlled substance] with the intent to distribute it, and that [the defendant] assisted in their plan to deliver [it]." *United States v. Ledezma*, 26 F.3d 636, 641 (6th Cir. 1994). [Defendant's] mental state is thus an essential element of the offense . . . . *United States v. Bennett*, 291 F.3d 888, 895 (6th Cir. 2002).

Defendant argues that the evidence presented at trial was insufficient to sustain a conviction since it showed nothing more than his mere presence at the scene of the raid and arrest; he says this was the only evidence tying him to the alleged crime.

The Government says that Defendant's challenge to the sufficiency of the evidence does not present a substantial question. The Government contends the Motion is an attempt to forestall and delay service of his sentence.

Several officers testified at trial regarding their surveillance efforts. Michigan State police officer Daniel Pizana testified that Defendant's black cargo truck arrived at the warehouse at 11:52 am. Trial Transcript, Volume II, p. 160. There was the driver and one passenger, Cordell Sain, inside the truck. Trial Transcript, Volume II, p. 160-161. At 12:05 pm, the driver backed the truck towards the overhead door, then left the

6

location. Trial Transcript, Volume II, p. 161.  The black cargo truck returned around 1:55 pm. Trial Transcript, Volume II, p. 169.  At 2:07 pm, the black truck backed up to the overhead door, and after it was parked Pizana heard a loud banging noise. Trial Transcript, Volume II, p. 173.  At 2:10 pm, he observed DEA agents rush in for a take down. Trial Transcript, Volume II, p. 174.

Arresting officer Michael Maurier testified that just prior to the takedown, he observed several males in a line passing rectangular objects from the warehouse floor to the truck; these objects, packaged in Saran Wrap, appeared to be marijuana. Trial Transcript, Volume II, p. 213-214.  There was a large pile of these packages on the warehouse floor. Trial Transcript, Volume II, p. 214.  Maurier was the first officer to look inside the black truck and observe four people; Defendant was one of the four. Trial Transcript, Volume II, p. 217.  Maurier observed more than 100 bales inside the truck. Trial Transcript, Volume II, p. 219. Once inside the truck, he could smell unburnt marijuana. Trial Transcript, Volume II, p. 220.  A handgun was seized from Defendant, inside the black truck. Trial Transcript, Volume II, p. 220.

Defendant testified that he arrived at the warehouse around noon. Trial Transcript, Volume V, p. 34.  He was told to get something to eat and come back, which he did. Trial Transcript, Volume V, p. 35.  He returned around 2:07 pm. Trial Transcript, Volume V, p. 21.  Someone tapped on the door and told him to go to the back. Trial Transcript, Volume V, p. 21.  Three minutes after arriving, he went inside the building. Trial Transcript, Volume V, p. 16.   He immediately heard a lot of bumping, then stepped into the back of the truck. Trial Transcript, Volume V, p. 16.  Once he entered the truck, the raid occurred. Trial Transcript, Volume V, p. 16.  In the short time he was in the

7

truck, he did not have time to reflect to see what the packages contained. Trial

Transcript, Volume V, p. 48.  He never removed, stowed or stacked any packages. Trial

Transcript, Volume V, pp. 16-17.

Defendant also testified that he was wearing his company shirt with a CMC

emblem on the chest. Trial Transcript, Volume V, p. 17.  He carried a loaded pistol in his

waist, but had a concealed weapons permit. Trial Transcript, Volume V, p. 18.  He was

at the location because he received a call to move 200 boxes; he brought pads, dollies,

and straps for a professional move.  Trial Transcript, Volume V, p. 22-23.  He never

agreed to participate in any illegal act and did not know the parties. Trial Transcript,

Volume V, p. 24.

In his Motion, Defendant says there is no evidence that he knew the marijuana

was in the warehouse before his arrival, or that he was ever involved or suspected of

engaging in illegal activity.  He also notes that his name was unknown to law

enforcement prior to his arrest.

The evidence was debatable and close.  However, jury verdicts finding guilt

beyond a reasonable doubt are regularly sustained even though the evidence was such

that the jury would have been justified in having a reasonable doubt; even though the

trial judge might not have reached the same conclusion as the jury; and, even though

appellate judges are often closely divided on whether there was sufficient evidence to

support a conviction. *Johnson*, 406 U.S. at 362.

This case is inapposite to *Craig* where the drugs were contained in a small

closed box and there was no indication that Craig knew of the contents.  Here, there

were multiple bales of marijuana packaged in a manner consistent with methods used

8

by drug traffickers.  The bales were out in the open, both on the warehouse floor and inside Defendant's black truck.  And, the smell of unburnt marijuana was apparent.  A jury could have determined that Defendant was duped into appearing at the location for what he believed was a legitimate professional move.  However, by virtue of the surrounding circumstances and the large quantity of marijuana, a jury could have just as easily determined beyond a reasonable doubt that Defendant knew his co-defendants possessed the marijuana with intent to deliver it and he assisted in the plan by allowing his truck to be used to carry and transport the large load.

Despite the Court's determination that Defendant poses little risk of flight or danger to the community, the motion for bond must be denied; Defendant fails to raise a substantial question of law or fact that, if decided in his favor, would likely result in reversal, a new trial, or an adjustment of his sentence on appeal. See *Chilingirian*, 280 F.3d at 709 (6th Cir. 2002) (denying bond solely because defendant failed to raise a substantial question).

## IV.   CONCLUSION

The Court **DENIES** Defendant's Motion for Bond Pending Appeal because he did not overcome the presumption in favor of detention.  Defendant must self-report to the BOP on June 8, 2009 at noon.

**IT IS ORDERED**.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  June 4, 2009

9

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on June 4, 2009.

s/Carol A. Pinegar
Deputy Clerk