UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVSION

UNITED STATES OF AMERICA,

    Plaintiff,

vs                                                                         Case No: 07-20309
                                                              Honorable Victoria A. Roberts

DAVID CARTER,

    Defendant.
_____/

**ORDER DENYING MOTION UNDER 28 U.S.C. §2255**

**I.    INTRODUCTION**

This matter is before the Court on Petitioner David Carter's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Doc. 350). The Government filed a response in opposition (Doc. 354), and Petitioner filed a reply (Doc. 355). For the reasons that follow, Petitioner's § 2255 motion is **DENIED**.

**II.    BACKGROUND**

The Sixth Circuit summarized the facts leading to Carter's arrest as follows:

    The Drug Enforcement Agency ("DEA") and Federal Bureau of Investigation ("FBI") were each conducting investigations involving drug trafficking in Michigan in 2007. On June 4, 2007, a DEA informant notified the agency that Costica Bonas was set to receive a 2,500 pound shipment of marijuana in Romulus, Michigan, shipped from Canada on June 5, 2007. Near the same time, a task force named CHIEF, comprised of FBI agents, DEA

1

agents, and the Michigan State Police received information that a suspected drug trafficker, Ramon Soria, who had been arrested in 2007 in Texas with over 200 pounds of marijuana but fled while on bond, was staying at a Days Inn in Romulus, Michigan. The DEA and FBI, thereafter, coordinated surveillance.

On June 5, agents observed Soria meeting with three other individuals at the hotel. The four individuals then left the hotel in rental cars, with Soria and Herrera in one car, and the other two individuals in a second car. Agents followed the vehicles to a warehouse in Huron Township. The agents then set up surveillance of the warehouse. On the same day, several different vehicles with several different individuals, including Soria and Bonas, arrived at and departed from the warehouse. At about 11:14 a.m., multiple vehicles, including a black cargo truck and a white Toyota were present at the warehouse parked near each other. At about 12:05 p.m., a black cargo truck backed up to the warehouse door and then pulled away and left the warehouse. The white Toyota also left as the black cargo truck pulled away. Agents followed the white Toyota until it met a 53–foot long semi tractor-trailer ("semi") and led the semi back to the warehouse. The semi arrived at about 12:15 p.m. and backed into the warehouse doors. Agents and officers saw individuals bring tools at about 12:30 p.m. The semi departed the warehouse at about 12:40 p.m. without its trailer, which was left inside the warehouse. Agents overheard grinding and drilling noises. At about 1:55 p.m., the semi returned to the warehouse. The black cargo truck also returned. The semi picked up the trailer, and again departed. The black cargo truck backed into the warehouse at about 2:07 p.m. Agents and officers

reportedly smelled marijuana and observed several men wearing gloves passing bales of marijuana from the warehouse into the black cargo truck as they entered the warehouse at about 2:10 p.m. Over 200 bales of marijuana, weighing about 2,312 pounds in total, were recovered from the warehouse, the black cargo truck, and from the semi's secret compartments when it was pulled over and searched after it left the warehouse. Defendants Bonas, Carter, Sain and eight others individuals were arrested as a result of the DEA and FBI raid and indicted on drug trafficking charges. At the time of his arrest, Carter had a loaded handgun tucked into his waistband. Carter had a valid concealed weapons permit for the gun. *United States v. Carter*, No. 09-1435 (6th Cir. May 24, 2011) (unpublished). The black cargo truck was driven by Carter and owned by his moving company, Cartel Moving Company. Upon arriving at the warehouse a second time, Carter got out of the truck and assisted co-defendants in loading bales of marijuana into the back. Within minutes, agents raided the warehouse and arrested the defendants.

Carter and ten other defendants were indicted together on various charges arising out of the drug conspiracy and transaction. Carter was charged with conspiracy to possess, with the intent to distribute marijuana, in violation of 21 U.S.C. §§ 841, 846; possession of marijuana with the intent to distribute, aiding and abetting, in violation of 21 U.S.C. § 841(a)(2) and 18 U.S.C. § 2; and possession of a firearm in connection with drug trafficking, in violation of 18 U.S.C. § 924(c).

Carter was tried together with four co-defendants. Carter testified that he was not part of the conspiracy and was not guilty of the other charged offenses. In support,

"Carter testified that he was at the industrial location for an extremely short time, from approximately 2:07 p.m. to the time of the raid at 2:10 p.m., to pick up a shipment that his moving company was called to retrieve and that he had no knowledge of the drugs. Carter further testified that unlike his co-defendants, he was not wearing gloves at the time of the arrest, to suggest that he was not involved in the drug trafficking ring." *United States v. Carter*, No. 09-1435 (6th Cir. May 24, 2011) (unpublished).  Carter has maintained throughout his pleadings that he had no part in, or knowledge of, the drug conspiracy, and believed he was engaged in a legitimate business transaction through his moving company.

At trial, the jury acquitted Carter of the conspiracy charge but found him guilty of possession of a firearm in connection with drug trafficking, and aiding and abetting the possession of marijuana with the intent to distribute.  He was sentenced to consecutive terms of 120 months for the marijuana offense, and 60 months for the firearm offense.

Carter filed a direct appeal to the Sixth Circuit arguing that his conviction was against the great weight of the evidence, and that his sentence was unreasonable, warranted safety valve relief, and should have been decreased based upon his role in the offenses.  The Sixth Circuit affirmed.

Carter filed his § 2255 motion on February 10, 2012.  He alleges that his trial counsel was ineffective in three ways: (1) by failing to move to sever his trial from that of codefendants; (2) by failing to move for acquittal; and (3) by failing to investigate, copy, and present at trial certain documentary evidence and witnesses.  The Court turns to these claims now.

**III.    ANALYSIS**

A.	Standard of Review

Because Petitioner's habeas petition was filed after April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 governs this cause. Under § 2255, a prisoner in custody under sentence of a federal court may move the court to vacate, correct, or set aside the sentence on grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the Court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. The petitioner bears the burden to show he is entitled to relief. *Bowers v. Battles*, 568 F.2d 1, 5 (6th Cir. 1977).

To prevail on a § 2255 motion that alleges constitutional error, the petitioner must establish an error "of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). When the motion alleges non-constitutional error, "the petitioner must establish a fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *Id.* (citations and internal quotation marks omitted). Thus, "[a] motion brought under § 2255 must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).

"Normally, sentencing challenges must be made on direct appeal or they are waived." *Weinberger*, 268 F.3d at 351; *see also Regalado v. United States*, 334 F.3d

520, 528 (6th Cir. 2003) ("Section 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process."). The general rule is claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice. *See United States v. Frady*, 456 U.S. 152, 167-68 (1982). However, because a defendant claiming ineffective assistance of counsel will often need to develop the district court record, and the district court is better suited than the appellate court to assess the facts related to the adequacy of defense counsel, an ineffective assistance of counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal. *See Massaro v. United States*, 538 U.S. 500, 503-06 (2003).

**B.     Ineffective Assistance of Counsel Claim**

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const., amend. VI. This Sixth Amendment right to counsel is the right to effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 685 (1984).

The United States Supreme Court set forth a two-part test to determine whether a defendant received constitutionally ineffective assistance of counsel in *Strickland v. Washington*. First, Defendant must prove that his attorney's performance was deficient. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if it "fell below an objective standard of reasonableness." *Id.* at 688. An objective standard of reasonableness is "reasonableness under prevailing professional norms." *Id.* The Court "must indulge a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged conduct might be considered sound trial strategy." *Id.* at 689.

Second, Defendant must show he was prejudiced by this deficiency. *Strickland*, 466 U.S. at 692. To prove prejudice, Defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. However, Defendant does not have to show "that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693. In cases where the defendant fails to establish prejudice by virtue of counsel's performance, the court need not consider whether counsel's performance was constitutionally inadequate. *Ross v. United States*, 339 F.3d 483, 495 (6th Cir. 2003).

### 1. Failure to Move to Sever

Carter asserts that his trial attorney was deficient for failing to move to sever his trial from that of his codefendants. He says this failure prejudiced him in three ways: (1) improper spill-over of the considerable evidence against the codefendants; (2) failure to preserve the issue of severance for appeal; and (3) loss of the opportunity to inform the Court, pursuant to Fed. R. Crim. Pro. 14(b), that no statements had been made by Carter or the codefendants connecting Carter to the alleged conspiracy.

Carter's claim that trial counsel's failure to move to sever amounts to ineffective assistance of counsel is without merit because he fails to demonstrate prejudice. *See United States v. Gibbs*, 182 F.3d 408, 434 (6th Cir. 1999) ("Only if a defendant can show prejudice to his case can we conclude that the district court abused its discretion

by not granting severance under Rule 14.")

Under Fed. R. Crim. Pro. 8(b), "two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Rule 14 provides that if the joinder of defendants in an indictment appears to prejudice a defendant, the court may sever the defendants' trials. Granting or denying a motion to sever is within the district court's sound discretion. *United States v. Martinez*, 432 F. App'x 526, 529 (6th Cir. 2011).

The discretion to sever, though, is not without limit. Severance of a trial of defendants who were jointly indicted "is an extraordinary remedy, employed only to alleviate 'a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *United States v. Franklin*, 415 F.3d 537, 556 (6th Cir. 2005), quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993). Courts typically favor the joinder of defendants charged with participating in the same act or series of acts because it is more efficient than separate trials. *Gibbs*, 182 F.3d at 434; *United States v. Tocco*, 200 F.3d 401, 413 (6th Cir. 2000). Thus, "[a] defendant seeking severance at trial from co-defendants bears a strong burden and must demonstrate substantial, undue, or compelling prejudice." *Franklin*, 415 F.3d at 556, quoting *United States v. Davis*, 177 F.3d 552, 558 (6th Cir. 1999).

The foundation of Carter's claim of prejudice is that he was merely present during the drug transaction and played no role in its planning or execution. He argues that the jury was not able to distinguish the substantial evidence against the codefendants from

the scant evidence against himself.

Juries, however, "are presumed to be able to sort through the evidence and to distinguish between different crimes and defendants in order to determine which counts as to which defendants the government has proven beyond a reasonable doubt, and which counts as to which defendants it has not." *Martinez*, 432 Fed.Appx. at 531. Moreover, any potential prejudice can be cured by an instruction to the jury to consider the defendants and the counts separately. *Gibbs*, 182 F.3d at 434.

Here, the Court included cautionary statements in its instructions to the jury to reduce the possibility of prejudice. *E.g.*, Tr. Vol. 6, p. 12 ("It is your duty to separately consider the evidence that relates to each charge and to return a separate verdict for each one."). Moreover, the jury here proved itself capable of separating the evidence against each defendant: it acquitted Carter and codefendant Michael Hadden of the conspiracy charge, while finding codefendants Costica Bonas and Joe Nemes guilty of conspiracy.

Carter has not shown substantial prejudice from trial counsel's failure to file a motion to sever. Moreover, it is highly unlikely that the district court would have granted such a motion, or that the Sixth Circuit would have ruled in Movant's favor had the issue been preserved for appeal. *See Shaneberger v. Bell*, No. 03-74452, 2007 WL 2688563 at *12 (E.D. Mich. Sept. 6, 2007) (unpublished) ("[T]rial counsel's failure to move for a severance of the trial cannot reasonably be construed as resulting in ineffective assistance of counsel where based upon the facts, such a motion was unlikely to be granted."). Therefore, counsel was not constitutionally ineffective.

### 2. Failure to Move for Acquittal

Carter also claims that trial counsel was constitutionally ineffective for failing to make a Rule 29 motion for judgment of acquittal, both at the conclusion of the Government's case-in-chief, and after the jury verdict. Carter says he was prejudiced by this failure because the evidence presented at trial was insufficient to convict.

Carter's Rule 29 claim is a veiled attempt to reargue the sufficiency of the evidence underlying his convictions, a matter already decided by the Sixth Circuit on direct appeal. In support of this claim, Carter makes the same arguments that he made on direct appeal: that his mere presence at the scene at the time of arrest is insufficient to support a conviction; that there was no evidence that he knew marijuana was in the warehouse prior to his arrival; and that he did not know any of the coconspirators prior to his arrival at the scene for what he believed to be a legitimate moving job. Unfortunately for Carter, the Sixth Circuit already ruled that the evidence was sufficient to support his conviction.

In finding the evidence sufficient, the Sixth Circuit stated:

Carter was twice present at the scene, before and during the drug raid. Driving with another member of the conspiracy, he backed his truck up and the co-defendants loaded bales of marijuana into it. Carter was arrested in the back of the cargo van where bales of marijuana were present. The jury weighed Carter's own testimony that he was simply an innocent individual picking up a shipment for his moving company with the testimony of multiple federal agents, which indicated that a huge drug shipment had been planned and was being executed, that the marijuana was packed in clear bales and exuded a pungent aroma, and that Carter wore gloves just like his co-defendants at the time of arrest . . . . Here,

10

> a reasonable juror could find that an innocent person would not stay in the back of the cargo van–even if only for a few minutes–while it was clearly being loaded with marijuana. Such a finding is a particularly reasonable inference when the same individual possessed a handgun and was wearing gloves like the other defendants. Furthermore, it would be quite reasonable for a juror to conclude that it would be highly unlikely for drug dealers to hire a legitimate moving company to move millions of dollars of marijuana that had a pungent odor and was wrapped in clear plastic. Upon review of the record, we find that a rational trier of fact could have found the essential elements of the crimes . . . .
>
> *United States v. Carter*, No. 09-1435 (6th Cir. May 24, 2011) (unpublished).

Carter has not shown that any prejudice resulted from trial counsel's failure to make a Rule 29 motion. As explained by the Sixth Circuit, the evidence, when viewed in the light most favorable to the prosecution, was sufficient to support the guilty verdict. Where, as here, there is no reasonable probability that a motion for acquittal would succeed, counsel's failure to make such a motion is not ineffective assistance of counsel. *U.S. v. Carter*, 355 F.3d 920, 924-25 (6th Cir. 2004). Moreover, the issue of the sufficiency of the evidence was finally decided by the Sixth Circuit on direct appeal; Carter cannot reargue it here under the guise of an ineffective assistance of counsel claim.

### 3. Failure to Investigate and Present Exculpatory Evidence

Carter also alleges that trial counsel was ineffective based on a failure to investigate and present certain documentary evidence and witnesses. Again, Carter fails to show prejudice from any alleged failures to investigate so his claim must fail.

It is well established that "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691; *see also Wiggins v. Smith*, 539 U.S. 510 (2003) (holding that petitioner was entitled to writ of habeas corpus because defense counsel failed to conduct a reasonable investigation into mitigating evidence with respect to sentencing). The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005) (citing *Bryant v. Scott*, 28 F.3d 1411, 1419 (5th Cir. 1994)). "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000).

Much of the evidence that Carter says trial counsel failed to investigate and later present at trial relates to his alleged lack of connection to the other coconspirators prior to the drug transaction that resulted in his arrest. Carter's theory is that if the jury had been presented with additional evidence that he was not part of the conspiracy, but accidently stumbled upon the drug transaction during what he believed to be a routine and legitimate pick-up for his moving company, then he would not have been convicted. Among the evidence Carter says trial counsel failed to investigate and present are:

- Statements from witnesses, informants, and codefendants that Carter was never associated with them prior to his arrest;

- Cellular phone records of all codefendants to prove lack of prior

12

    association with Carter;

- Various other documents of codefendants to prove lack of prior association with Carter;

- Carter's own cellular phone records to prove lack of prior association with codefendants;

- Inventory of Carter's vehicle, which would have produced a routine and legitimate work order of Cartel Moving Company and no evidence of illegal activity;

- Phone records of Cartel Moving Company, which would have confirmed receipt of what was thought to be a legitimate work order;

- Various employees of Cartel Moving Company who would have testified to Carter's belief that he was heading to a routine business transaction.

Any deficiency by counsel in failing to investigate or present the above evidence did not prejudice Carter. This is because evidence of pre-arrest association with alleged coconspirators is not an element of possession with attempt to distribute marijuana, or of the aiding and abetting offense. To establish a violation of possession of marijuana with intent to distribute, the government must prove the following elements: (1) knowing (2) possession of a controlled substance; (3) with intent to distribute. *United States v. Mackey*, 265 F.3d 457, 460 (6th Cir. 2001). To establish aiding and abetting in violation of 18 U.S.C. § 2, Carter must have possessed "knowledge of the general scope and nature of the illegal [activity] and awareness of the general facts concerning the venture." *United States v. Silwo*, 620 F.3d 630, 638 (6th Cir. 2010) (citation omitted).

As the Government points out, evidence of pre-arrest non-association with co-defendants would have been relevant to the conspiracy to distribute count, but Carter was acquitted of that count. Evidence of pre-arrest non-association with co-defendants is irrelevant to the possession with attempt to distribute, aiding and abetting charge. Therefore, Carter was not prejudiced by any alleged deficiency of counsel to investigate and present evidence of non-association.

The only relevant time frame for the charges of conviction is the period from Carter's arrival at the warehouse until his arrest -- about three minutes, according to the testimony in this case. During that short time period, Carter assisted co-defendants to load barrels of marijuana into the back of his truck. These facts alone support conviction of the aiding and abetting charge. The Court recognized as much at sentencing:

> The Court: But you say that you only had about three minutes to make a choice. The testimony in this case bears out the fact that you made the wrong choice. You were not merely present. The evidence in this case shows that you were in the back of the truck and you that you were, along with others, passing and hauling bales of marijuana. Tr., 3/23/2009, p. 24.

Thus, even if the Court credits Carter's argument -- that he had no prior association with co-defendants and believed he was attending a legitimate business transaction -- the evidence still supports a finding that upon arrival at the warehouse Carter aided and abetted the drug transaction. Prior association or non-association with codefendants is irrelevant to Carter's conduct during the three minutes after his arrival but prior to his arrest. Because it is irrelevant, counsel's alleged failure to investigate or present

14

evidence of non-association could not have prejudiced Carter.

Similarly, counsel's failure to investigate or present records of Cartel Moving Company that allegedly support Carter's belief that he was attending a legitimate business transaction could not have prejudiced Carter. Even if Carter actually believed he was attending a legitimate transaction, the evidence supports a finding that upon arrival he became aware that a drug transaction was taking place and decided to assist in the drug transaction that resulted in his arrest.

Carter also says his counsel was deficient for failing to request and present at trial certain law enforcement documents: formal reports and investigative field notes of DEA and FBI agents, and Department of Justice Task Force Agreements for all personnel present at the scene of Carter's surveillance and arrest.

As the Government points out, Carter did in fact receive the formal report of DEA Agent Beasley, and counsel used it to cross-examine Government witnesses. In addition, Carter does not say how he would have benefitted from agents' field notes, or from task force agreements. Counsel cross-examined the agents who conducted surveillance on the day of Carter's arrest, so there was no prejudice from failure to obtain field notes. Nor was it unreasonable for counsel to not obtain task force agreements, since it is unclear what benefit they could have provided to Carter's defense.

Carter also says counsel was ineffective for not presenting photos of the marijuana bales at trial. However, photos of the bales, as well as two bales of marijuana, were admitted in evidence at trial. The Government also admitted into evidence a video of the 200 marijuana bales being processed into evidence at the DEA.

The jury, therefore, was aware of the appearance of the bales; Carter was not prejudiced by counsel's failure to present photos of the marijuana bales.

Lastly, Carter says counsel was ineffective for failing to investigate an alleged telephone call to him from DEA Special Agent Luigi Milani, in which Agent Milani allegedly admitted that the Government knew Carter was innocent. The Government says this allegation is ludicrous, and denies that the call was ever made. Further, Agent Milani testified at trial; counsel could have cross-examined him about this alleged phone call, but Agent Milani's opinion as to Carter's guilt or innocence would have been inadmissible as irrelevant and overly prejudicial. Therefore, Carter was not prejudiced.

## IV. CONCLUSION

For these reasons, the Court finds that Carter was not prejudiced by any alleged deficiencies in trial counsel's representation. Carter's motion to vacate, correct, or set aside his sentence is **DENIED.**

**IT IS ORDERED.**

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: July 6, 2012

The undersigned certifies that a copy of this document was served on the attorneys of record and David Carter by electronic means or U.S. Mail on July 6, 2012.

s/Linda Vertriest
Deputy Clerk